Ruffin, C. J.
 

 We think his Honor went much further than the occasion authorized, in leaving it to the jury to find, that.the, defendant might have received notice directed to him at Danville and put into the post office there, as soon as if it had been directed to him at Reidsville; or that Coleman was the agent of the defendant to renew the notes, and receive notice of their dishonor; or that the defendant had a fill I knowledge of the laches of the Bank, in not duly giving him notice and with such knowledge assumed to pay or renew the notes. For there was no evidence, on which the, jury could have found either of the facts, thus left to them. It is true, that Danville had once been the defendant’s post office; but he had changed his residence eight or ten years before these occurrences, and, during that period, Reidsville had been his post office; from which he received letters three times a week and it does-not appear that he had received a single letter, that was addressed to him at Danville, or that one had been thus addressed to him, except the notices of protest by the notary public, who protested these notes ; or that the defendant was in Danville, except to make the arrangement with the bank and Rawlins and Coleman, in April, 1842, and when he gave blank endorsements to Lynn to be filled up from sixty days to sixty days for renewals. There tvas nothing, therefore, to make Danville his post office or take the case out of the common rule, that notice must he sent to the endorser, addressed to the post office, nearest to him, or that, through which he usually conducts his correspondence, unless he designate some other. We say there was no evidence upon that point, because the statement of the notary public, that he was ignorant-of the defendant’s new residence, and that Reidsville was his post office, and that he thought Coleman was the defendant’s agent to receive notice of protest, and attend to the renewals
 
 *619
 
 for the defendant, prove nothing, except that person's ranee of facts, which were notorious, even to several of the directors and other officers of the bank, and persons general-]y, and which he ought to have known or enquired about, and eXcept, farther, that he was grossly mistaken in supposing that Coleman was in fact the defendant’s agent, and in supposing that he had any ground for thinking him the agent, in the circumstance, that he attended to the renewal of notes of which he, Coleman, was one of the makers, and which were endorsed by the defendant for the accommodation of the makers. A maker is the last person, that ought to be presumed to be the agent of the endorser. Indeed, it is impossible to believe, that the Board of Directors should not have known the residence of a planter in the county, twenty-two miles from Danville, for so long a period as eight or ten years, to whose means they looked chiefly as securing'so large a debt as one of $11,700, or could have thought, without express directions from the endorser, that the maker was the endorser’s agent to receive notice of the maker’s own default. There was as little evidence, that the defendant was informed by this witnesá, at the interview of December Í2th, 1843, that he had neglected, as notary public, to send him notice to Reidsville, (which was the
 
 laches
 
 in the case) and that with that knowledge the defendant assumed.the debt. The witness did not state that he gave the defendant that information, and, on the contrary it is clear that- he did not, inasmuch as he says, tha-t he did not know, that Reidsville was the defendant’s post office; and therefore he would not hav'e thought himself more bound to tell the defendant, that he had not sent the notice to Reidsvilie, than he had felt bound in the first instance to send it there. Neither was there any thing said by the defendant, that could be fairly construed into a promise to assume the debts: and a very explicit one should be required in such a case; for, although the defendant yielded for a moment to the insinuations of the witness, that upon his return to Danville he might tell Lynn and Coleman to use the signatures of the defendant to blanks left with Lynn,’
 
 *620
 
 the purpose of reinstating the notes, he said in the sarfte that he would not allow it, but that he would go down in a short time and personally arrange the business. Jt is true, he added that Lynn might apply the' money, which he had collected, as trustee, towards the payment of one of the notes ; but that does not imply an assumpsit by the defendant, since that money was, as a fund provided by the principal debtors for the payment of these notes, applicable to them,in equity, at all events, whether the defendant remained liable1 for them or had become exonerated ; and the defendant was-therefore only expressing an assent to what he could not pre- , vent.
 

 Of the opinions given on the
 
 foregoing points, therefore,
 
 the plaintiff could have no cause to complain. But whether they were correct or not makes but little difference to the par-ties now; for the jury by their verdict have affirmed, that-Danville was not the post office of the defendant, and that he' would not get notice as soon from that office as from Reids--ville, and that Coleman was not the defendant’s agent, and that the defendant did not, with a knowledge of the plaintiff’s'
 
 inches,
 
 assume the debt. So, those points are not in the case,that is to be decided by this Court, which can only review errors of law by the Judge against the plaintiff, and not errors of the jury.
 

 But it is said, that the Court erred in refusing thé specific instruction prayed for, that, if the defendant left the notes in Danville and the whole transaction took place at Danville, the jury might infer, that the -defendant received the notice for that was but a reasonable presumption of fact. We are at a loss to discover any ground for such presumption. It is not understood clearly by us, what is meant by the expression* that “ the whole transaction took place at Danville.” Taking it in connexion with the evidence and the argument at the bar,we presume it was intended to say, as the defendant left his name in Danville with Lynn in blank, and as Rawlins and Coleman wrote on the papers their notes, dated at Danville, and payable at the bank at Danville, to the defendant,- who'
 
 *621
 
 was thereby made the endorser of notes thus expressed, therefore notice was to be given to the defendant of the dishonor at that place, and that notice through the post office there was sufficient, as he had no place of business or agent there. But the Court thinks that position untenable. The only case cited in support of it is,
 
 Mann
 
 v.
 
 Moors,
 
 at Nisi Prius, 1 Ry. and Moody, 249, in which it was held1, that, where a bill of exchange was dated “ Manchester,” it was sufficient to direct a notice of its dishonor to the drawer at “Manchester,” without designating more particularly his street and number. That we think was clearly right, as the drawer had not given his address in the bill more specially, but by the general term, “ Manchesterfor it is sufficient to follow the-direction of the drawer himself, as to his residence. But that has no application to a case of endorsement, to which no placé-is annexed in the bill. The note being dated in Danville, is-no evidence that the payee lives there ; nor is the endorse-ment by the payee in Danville, any evidence thereof. If the note in its face had been expressed to be payable to L. Palmer, “of Danville,” or if the endorsement had been rendered local by adding “ Danville” to the defendant’s name, and the residence of the defendant had not been known to the holder, then notiee to him at Danville, through the post office, would have- been sufficient. But the endorsement here was in blank, and therefore the notice ought to have been given at the proper office of the defendant. -The difference between such an endorsement at large, and the drawing of a bill dated at a particular place, was held by Chief Justice Abbott himself, who decided
 
 Mann
 
 v.
 
 Moors.
 
 For not a year before he held in
 
 Walter
 
 v. Hayney, 1 Ry. and Moody, 149, that notice to-an endorser of a bill, directed to him at “ Bristol,” wastoo-general, as, in such a large place, his residence might not be known, or there might be others of the same- name, and the endorser did not designate in his endorsement the place where: it was made, or where he lived, as was done by the drawer of the bill in the other case.
 

 It was further urged by the plaintiff’s counsel, that the court
 
 *622
 
 erred, in laying it down peremptorily and without qualifiers-^01'1’ ^&t n°tice must be sent by the next post, whereas there are many cases in which the holder may be excused from gtrjct ¿iiigenCe. as his other indispensable engagements, or that he is making enquiries coneerningthe endorser’s place of abode and post office, or that the first post goes out so early after the default, that notice could not with convenience be sent by it. But, certainly, “ the general rule” is, that, with regard to such persons as live at different places, notice should be sent by the
 
 next
 
 post. If there be any of the excuses, that are above supposed, then the holder may have till a second post; but it is for him to shew the matter of excuse. So the rule is expressed by Mr. Justice Lawrence,
 
 in Darbishire
 
 v. Parker, 6 East, 3, and we believe it is perfectly correct. Therefore, in reference to the case before the court, in which no excuse was given,' and in which, indeed, no notice was ever sent to the proper office, the rule was properly stated to the jury without qualification.
 

 But the stress of the argument was, that the court erred in refusing the instructions, that if the defendant had reasonable grounds to believe that the makers would not renew these notes at maturity, or if the makers had conveyed to Lynn all their property as an indemnity to the defendant, notice was not necessary; and in giving the instructions, that the insolvency of the makers, and the fact, that the defendant had taken a deed of trust for property of the makers, as an indemnity, did not dispense with notice.
 

 It may be observed, however, that the counsel for the plaintiff took, in the argument here, a preliminary objection to requiring notice, which was not raised in the Superior Court; which is, that the memorandum, signed by the defendant on the deed of the 8th of May, 1837-, expressly dispenses with demand, protest and notice. It would be sufficient to say in answer, that the point was not taken on the trial. But that agreement is confined to “ the notes within enumerated, and on which we appear as endorsers,” which were secured by that deed. But those notes were not of that character: for
 
 *623
 
 these debts were taken out of that deed, and placed on a new footing of “activity,” by giving new notes, upon which discount and curtailments were to be paid every 60 days. They were no longer subject to the agreement in question ; but were to be regulated by the new agreement and the second deed of trust. It remains, therefore, to consider the other general errors alleged.
 

 Although it was once held, in
 
 De Berdt
 
 v.
 
 Atkinson, 2
 
 H. Bl. 336, that the known insolvency of the maker of a bill or note would prevent a person, who lent his name to give credit to the paper, from insisting on a demand and notice ; yet the point was very soon ruled otherwise by three of the four judges who had decided it, in the case of
 
 Nicholson and Gouthit, 2
 
 H. Bl. 609, in which the endorser had guarantied the payment of the debt, for which the note was given, and the maker was in bad circumstances at the time, and became insolvent before the note fell due; and it was the understanding of all parties, that the maker could not pay the note, and that the endorser should. Yet in that case, strong as the apparent justice of if was on the side of the holder, it was held, that the note must be duly presented, in order to charge the endorser. And in many cases since, in which
 
 De Berdt
 
 v.
 
 Atkinson
 
 was cited, it has been disregarded, and a contrary principle established. As in the case of
 
 Smith
 
 v.
 
 Beckett,
 
 13 East, 187.
 
 Esdaile
 
 v.
 
 Sowerby,
 
 11 East, 114.
 
 Whitfield
 
 v.
 
 Savage, 2
 
 Bos. & Pul. 279. And the same doctrine has been held in this country;
 
 French
 
 v.
 
 The Bank of Columbia,
 
 4 Cranch, 141.
 
 Smith
 
 v.
 
 McLean,
 
 No. Ca. T. R. 72. For although the maker be insolvent, there may be many other means by which the endorser might possibly, through the maker’s friends, get security, if the holder had afforded him the opportunity. Therefore, although the makers were insolvent, and the defendant had ground to believe, nay, all parties understood, that,.by reason of the maker’s insolvency, the defendant would have to pay the debts, the cases of
 
 Nicholson
 
 v.
 
 Gouthit,
 
 and
 
 Esdaile
 
 v.
 
 Sowerby,
 
 are conclu- . sive authorities, that those circumstances are not equivalent to demaqd and due notice of dishonor.
 

 
 *624
 
 But it was said furthér, that the court ought to have left it ^le 11117 to ^nt^) ^lat ^le conveyance to Lynn was of all the property the makers had, and to have directed them that, was t[le factj the defendant was not entitled to notice. The proposition presents a very important question, which, assuming the fact to be as supposed, is novel to us, and does not appear, as far as we have been able to extend our researches, to have been decided by any court. No English adjudication has been cited in support of the position. It is supposed to be analogous to the rule of
 
 Bickerdike
 
 v.
 
 Bollman,
 
 1 T. R. 405, and certain cases decided upon what was deemed within the same principle ; that the drawer1 of a bill, who had no funds in the hands of the drawee, was bound for the amount of the bill, without notice of its dishonor. The judges, who decided that cause, founded their opinions on the ground, that it was a fraud to draw the bilí, and that the drawer was the real debtor, and “could not be prejudiced by the want of notice.” This does not mean, that, in every Case, evidence may be gone into, that a drawer or endorser was not in fact injured by the want of notice, as the acceptor or maker was insolvent ; for that would leave no rule as the law of the case, and make every case one for the jury on its particular circumstances. Rut it means, that when it appears, that a party to a bill has committed a fraud, as by drawing without funds or authority, he shall not call for notice ; for, if he had it, by no possibility could it change his liability or give him recourse on another. But, if he could have recourse over, as upon a bill drawn for the accommodation of the acceptor, or a note endorsed for the accommodation of the maker, then he is entitled to notice, although the acceptor or maker be insolvent.
 
 Corey
 
 v. Scott, 3 Barn. & Ald. 619.
 
 Ex parte Heath,
 
 2 Bos. & Bea. 240.
 
 Norton
 
 v. Pickering, 8 B. & C. 610.
 
 Esdaile
 
 v.
 
 Sowerby. French
 
 v.
 
 Bank of Columbia.
 
 Again, if a note is made for the accommodation of the payee, and he has it discounted and receives the money on it, he is not entitled to notice; because he is the real debtor, and, therefore, primarily liable, and could have no recourse on the maker. 4
 
 *625
 
 Cranch, 64; 2 Chitty’s Pl. 133.
 
 Brown v.
 
 Maffey, 15 East, 216.
 
 Legge
 
 v. Thorpe, 12 East, 171. So, it is held, upon a plain ground of justice, that, if a maker of a note places effects in the hands of the endorser to meet the note, the latter is not entitled to notice, because it would be a fraud in him to allow the maker to be called on for the payment, when he had the amount in his hands, and, therefore, had become the real debtor.
 
 Corney
 
 v.
 
 Da
 
 Costa, 1 Esp. R. 303. In every case, in which notice is dispensed with, there either was a fraud on the world in making the security, or it would be a fraud on the party, who, according to the form of the instrument, is legally bound before him, who insists on notice, but where in reality, and according to their actual liabilities, as between themselves, the relation of the parties is reversed, and he. who appeared to be primarily liable, was so only secondarily, and the other party was the real debtor. The principle governing those cases is an intelligible and just one. But does it embrace the present case ? We think not; but that there is an evident distinction between them.
 

 In the first place, it has been seen to be clearly settled, that as an endorser of an accommodation note, the defendant was guilty of no fraud on any body, and was therefore entitled to notice. More especially was that the case here, as the nature of the paper was fully understood by the bank, upon a communication with the makers and the endorser. Therefore, by taking the note in this form, instead of holding the defendant bound as a surety, simply by becoming a joint maker of the note, the bank must have intended, and perhaps was obliged by charter, to obtain a security liable, as was observed in
 
 Nicholson
 
 v. Gouthit, to all the legal consequences of an endorsement — among which is notice to the endorser in order to charge him.
 

 In the next place, the defendant was not under any engagement to Rawlins and Coleman, or to the bank, in consideration of the trust fund or of any other fund, to take the debts on himself. The jury have so expressly found, as must be taken by their returning a verdict for the defendant under the
 
 *626
 
 instruction, that, if there was an understanding between the parties, that the defendant should, on that consideration, pay the debt, notice was not necessary. There being, then, no contract( eXpress or implied, of that nature, what else is there on which it can be held, that the defendant lias deprived himself of the right to notice, that is incident to the contract of endorsement ordinarily? It is said, that the taking an assignment to Lynn, as his trustee, of all the property of the makers as an indemnity to the defendant, is in law a waiver of notice by the defendant. For this,
 
 Bond v.
 
 Farnham,
 
 5
 
 Mass. Rep. 170, the leading case on the subject, is relied on. There notes were given in the ordinary course of business, as far as appears : at any rate, they were not to be renewed from time to time, as securities for a permanent loan from the holder to the makers, but were negotiated in the market and lodged in bank for collection at maturity. Before the particular note fell due, the maker became insolvent, and conveyed to the de■fendant, the endorser, for his security, all his property, which was not sufficient to pay all his liabilities for the maker. It was held, that the endorser waived a demand and notice thereby. Chief Justice Paksons gives as the reason, That endorser knew a demand would be fruitless, as he had secured all the property the maker had : and, as he secured it for the expjess purpose of meeting his endorsements, he must be considered as having waived the condition of his liability, and as having engaged with the maker, on receiving all his property, to take up his notes.” There are other cases to the same effect.
 
 Mechanics Bank of New York
 
 v.
 
 Griswold, 7
 
 Wend. 165, is one. The declaration contained two counts : the first, that, before the note fell due, the makers assigned to the defendant (the endorser) and another person, effects to a greater value than the amount of all
 
 the
 
 debts mentioned in the deed, in trust to pay this note and others specified, the second, after stating the making and endorsing of the note, and the assignment to the defendant and another, as before, averred that the effects assigned constituted all the property the makers had : each concluding in the usual form, that the
 
 *627
 
 defendant had not sustained any damage by reason of no demand and notice. Upon demurrer to both counts, the plain-" tiff had judgment. Me. Justice Nelson, after citing several of the cases already noticed, and relying particularly on
 
 Bond
 
 v. Farnham, as the strongest, adds, that, although insolvency is rather a reason for requiring than for dispensing with demand and notice, in order that an endorser may have an opportunity to save something out of the wreck of the estate, yet, “having anticipated that event and taken into his possession the whole of the estate, expressly to meet his responsibilities, the endorser has effectually secured every object which the law presumes would be the consequence of notice.” It is obvious, that the reasons given for the two judgments do not accord. In the latter case, notice is dispensed with, because, it is supposed to be of no use ; that the endorser could not possibly be prejudiced, as he had already “secured
 
 every
 
 object, for which the law entitles him to notice,” inasmuch as the maker has no more property. But, it will occur to every mind, that precisely the same argument is applicable to every case of total insolvency or bankruptcy. Yet in those cases, the law requires notice, as, peradventure, some one else may be willing to engage for the debtor. We presume, however, that it was not intended in that case to
 
 go
 
 beyond the doctrine of
 
 Bond
 
 v.
 
 Farnham,
 
 especially as far as the language used might seem at first to carry it. Now, the case of
 
 Bond
 
 v.
 
 Farnham
 
 puts the doctrine explicitly upon a supposed engagement, to be inferred from the circumstance, that the dorser took to himself a conveyance of all the debtor’s property to meet the notes, and that he, the endorser,
 
 would take up his notes.
 
 Whether that inference of fact was right or wrong, is not very material to our present purpose. It shows, that the judge thought such an engagement necessary to the conclusion arrived at; and the case came on there upon a verdict subject to the opinion of the court on a case agreed ; so that the court was at liberty to draw reasonable inferences of fact. But here the jury has expressly found, that the defendant did not undertake to pay these notes, and there is no room
 
 *628
 
 for this court to malte any such inference. But, supposing that point open, the two cases cited differ from the present in several essential particulars. Those were cases of the conveyance of
 
 all
 
 the debtor’s property, as admitted in the case agreed by the demurrer. In the present, it not only does not , appear, that the deed to Lynn conveyed all the property the debtor had, but it appeals that it did not. In the first place, the deed of May, 1837, conveyed an immense amount of property to secure, it is true, very large debts. But it is not stated, that, at the time of the deed of April, 1842, the value of the property mentioned in that of 1837, remaining unsold, did not exceed the amount of the debt, with which it was encumbered ; and, of course, the resulting trust in that fund was a property in Rawlins and Coleman. Again, the gentleman, who gave evidence as to the negotiation and agreement out of which the deed grew, stated explicitly, that, although it was at the time generally expected that Rawlins and Coleman would fail in a short time, yet they had not failed then. He says, they failed soon afterwards, and
 
 then “
 
 made a final surrender of
 
 all
 
 their effects to other trustees and for other creditors.’’ But, above all, it does explicitly appear, that, so far from the defendant’s agreeing to assume the debts, because he had the funds and all the funds the maker owned, the agreement was, that Rawlins and Coleman should retain the possession of all the estates conveyed to their own use for nine months at least, and until a necessity for a sale alter their default ; and that among the property were two houses in Dan-ville, and one in Richmond, and a negro man
 
 ;
 
 and, furthermore, that out of the profits of those estates, or other resources, they, the makers, actually paid in part of their debts, after the execution of the deed to Lynn, about $ 1,100 : being the discounts upon the sixty days renewals for about twenty months on this large debt. This fact puts a negative at once upon the implication of an engagementof Palmer to pay Rawlins and Coleman’s notes, and that he had stripped them of all their property and left them no resources. His Honor was, therefore, right in refusing the second special instruction prayed
 
 *629
 
 for ihe plaintiff, because it assumed, as á fact, what wa's not true, namely, that Rawlins and Coleman conveyed all their property in trust for the defendant; and, moreover, because it is not an implication of law, if the conveyance had been' of all the property, that the defendant had agreed to take up the notes, when, upon the prayer of the cóunsel of the plaintiff, it was submitted to the jury, whether there was any such engagement or “ understanding between the parties,” and the jury found, that in point of fact, there was not. We do not question, that an engagement by an endorser, upon any adequate consideration, though not a full one, to make the debts his own, will bind him; as in
 
 Corney
 
 v.
 
 Da
 
 Costa, and in
 
 Brown
 
 v.
 
 Maffey. So
 
 in
 
 Bond
 
 v.
 
 Farnham,
 
 the rule is right, if the inference of fact of the agreement by the endorser to take up the notes can be sustained, and we do not see that a jury might not draw that'inference under the circumstances or upon a case agreed,- that the court might not do it: But we cannot agree, that the law will adjudge on demurrer, that, if an endorser,-in order to save himself ás far as he can,take from an insolvent maker of a note a conveyance, by way of security, of property, even though it be all he have, the endorser thereby engages to make the1 debts his own, and that it is an act of bad faith to require the holder to make a demand, and see if he cannot get something more. But, here,the conveyance was but for part of the maker’s property, and the maker engaged with the creditors, and also with the endorser, not only to make the conveyance, but “to keep the notes active;” that is,-regularly renewed every sixty days,and to pay the discounts; and they actually paid under that engagement about $1,100, to the exoneration of the defendant. This was a most important relief to the defendant; for who does not see, that by thus keeping down the interest for ten years, for example, it would be equal to paying down half the debt, and in the mean while, the value of the assigned estates might increase. The inference sought to be drawn by the plaintiff from the deed, is absolutely opposed to the admitted-fact.
 

 
 *630
 
 But it strikes us, that there exists yet another distinctioti, between this case and those cited, equally important in repelling the inference, that the endorser had undertaken to pay the noteSi j[n a][ the cases we have considered, the funds were put into the hands of the endorser, or the conveyance made to the endorser, himself, except in that of
 
 Mechanics Bank of N. Y.
 
 v.
 
 Griswold
 
 ; and there it was to the endorser and another person. Here the assignment is to a third person, as a trustee, not for the endorser, merely, but for both the makers and the endorser, and the conveyance to him was upon an arrangement to which the bank, as the creditor, was a party, so as clearly
 
 to
 
 entitle the bank also to the benefit of
 
 the
 
 assignment, and, like other
 
 cestuis que trusts,
 
 to interpose and call for the execution of the trusts or control the trustee. The difference is essential. Where funds are supplied to the endorser, or property conveyed to him, he has the absolute control in the matter, and can sell when and how he pleases. He may be supposed, therefore, to assume the debt immediately and absolutely. But in the other case, in the absence of direct evidence of an assumpsit, • the inference is the other way. (Jan it be supposed the endorser meant to take up the notes at the end of the first sixty days, as his own, if the makers should fail then to renew them, while they must be allowed by the trustee to retain possession of the property for nine months, and might be allowed by him longer
 
 1
 
 When a third person is interposed as trustee, he must attend impartially to the interest of all parties.
 
 Hunt
 
 v.
 
 Bass,
 
 2 Dev. Eq. 292.
 
 Dowes
 
 v.
 
 Graysbrook,
 
 3 Meri. 208. And the very fact of interposing such third person, to the exclusion of the endorser himself, shews that the debtor, and, in this case, the creditor also, required such a trustee as a protection against the haste, the imprudence, or irresponsibility of the defendant himself. Would this trustee be at liberty to sell this trust property at half price, in order to save Palmer from the sale of his at an under value at execution sale ? Besides, the same gentleman, to whose important statement reference has been so often made, says, that when Palmer and Rawlins and Cole
 
 *631
 
 man proposed to the bank, that their trustees should re-convey some parts of the property to Rawlins and Coleman, it was a part ot the proposition, that Rawlins and Coleman should convey those estates and others to Lynn, in trust to save Palmer harmless as endorser, and :i to secure the payment of the debt aforesaid, for which Palmer stood bound;” and that in execution of that agreement, the first trustees conveyed, and then Rawlins and Palmer conveyed and assigned to Lynn, not only the same estates, but also several other large tracts of land, a slave, debts to the amount of «$4,077 34, and other things, from which debts alone, considerably over $2,000 have been realised already. It is, therefore, clear that the bank had an interest in this conveyance, as well as the defendant; and it cannot be doubted that such interest, in the form of additional property, may have materially induced the bank to assent to the new arrangement. Indeed, that witness deposes,
 
 “
 
 that the directors assented to the proposal, relying upon the credit of Palmer, and the funds to be hypothecated by the makers as a security for the said notes.” As the creditor, the bank is to all intents a
 
 cestui que
 
 trust, as well as Palmer is; and so are Rawlins and Coleman. All three would have a right to make representations to the trustee of their wishes and interest, and he would be bound, not merely to protect Palmer from harm, but also to secure the debt and to take care of the interest of the debtors, according to the best of his judgment. It is not easy to perceive, in such a case, a reason, why the endorser should be supposed to have become paymaster, as between him and the maker, more than that the bank agreed to look to the security of the property, and not to the persons. For, if the latter inference is repelled by the fact, that the endorser’s name is required on notes in renewal, as recognized in .the deed, so, likewise, the former is repelled by the fact, that the maker continues to give new notes, as maker, as the deed requires. In fine, we think that the acceptance by an endorser of an assignment to a third person, whether the maker' be solvent or insolvent, or the assignment be partial or total, as an indemnity against existing and future endorsements of notes, given in
 
 *632
 
 renewal, as the maker may require, in order to keep his paper "Rom being.dishonored, affords no presumption in law, that the endorser is under an obligation to take .up the notes, when the maker shall fail to offer renewals and pay discounts; and such an obligation we conceive to be the true test of the endorser’s being entitled or not entitled to notice.' Therefore tho judgment must be affirmed.
 

 Per Curiam, Judgment affirmed.