NATIONAL BANK OF ASHEVILLE v. J. S. BRADLEY.

*Inland    Bill—Accepted    Draft—Notice    to    Drawer    of Non-payment— Protest    Not    Necessary — Reasonable Notice.*

1. A draft having been accepted, the drawee becomes primarily liable and in the event of dishonor notice must be given to all who are secondarily liable as drawer and endorser.

2. If the paper is in fact, accommodation paper then, notwithstanding its form, the drawer is *primarily* liable and not entitled to notice but the burden of showing this is upon the holder.

3. In the case of an inland bill protest is not necessary but notice of dishonor must be given with the same promptness as of a protest.

4. Reasonable notice of dishonor of an inland bill is one which is sent by the first post after the day of dishonor.

CIVIL ACTION, tried at December Term, 1894, of BUNCOMBE Superior Court, before *Boykin, J.*

On the 10th day of October, 1891, the defendant Gilliam made his draft upon the Asheville Furniture and

Lumber Company, payable to his own order, of which the following is a copy:

" $400.          ASHEVILLE, N. C., October 10th, 1891.

Ninety days after date pay to the order of A. W. Gilliam four hundred dollars, value received, and charge the same to account of

A. W. GILLIAM.

To

Asheville Furniture and Lumber Co., Asheville, N. C.

On the same day the draft was duly accepted by the drawee, payable at the National Bank of Asheville. Soon thereafter Gilliam, for value, endorsed and delivered the draft to defendant Bradley, who, on October 30th following, transferred and endorsed it to the plaintiff and received the money, less discount of six or eight per cent. thereon.

The Asheville Furniture and Lumber Company failed about the first of November, 1891, and then became and has ever since remained insolvent. Defendant Bradley resided at Old Fort, in the county of McDowell, a station on the Western North Carolina Railway about 30 miles east of Asheville, and this fact was known to the plaintiff; the defendant Gilliam resided three or four miles from Old Fort, but neither he nor his address was known to the plaintiff.

The draft not being paid at maturity, to-wit, on January 11, 1892, on the 13th day of January, 1892, was protested and notice thereof was mailed to the defendant Bradley at Old Fort, who testified that he received it at about 4:30 P. M., on the 13th or 14th day of January. Banking hours in Asheville began at 9 o'clock A. M., and closed at 4 P. M. There was but one mail each day to Old

Fort, and the train which carried it left Asheville about 2 o'clock P. M., and it was the custom of the bank to prepare its mail during business hours and at the close thereof to post it. This custom was not known to the defendants.

Upon receipt of the notice Bradley sent immediately for Gilliam, who went to Old Fort where they had a conversation about the matter, in which Bradley showed Gilliam the notice and asked him if he had received one, and Gilliam replied he had not. A few days thereafter Bradley went to Asheville and had an interview with W. W. Barnard, plaintiff's president, in which he, Bradley, said that notice had not been sent Gilliam; thereupon a notice was sent Gilliam through the mail, which he received on the 19th of January. The notice was dated 11th of January, but the post-mark of Asheville office on the envelope bore date of 18th January.

Gilliam was solvent at the time of the maturity of the draft and is yet solvent.

The following issues were submitted to the jury :

"1. Was said draft at its maturity duly presented to the drawee, the Asheville Furniture and Lumber Co., for payment ? This issue was answered by consent by the court.

"2. Was due notice of the non-payment of the draft given to the defendant, A. W. Gilliam ?

"3. Was due notice of the non-payment of the draft given to the defendant, J. S. Bradley & Co ?"

The plaintiff prayed the court to instruct the jury that,

"1. If the jury find that the bill of exchange, or draft, was dated October 10th, 1891, and was payable 90 days from date, and banking hours in Asheville closed at 4 p. m.; that the train carrying the mail to Old Fort left Asheville at 2 o'clock p. m., and that notice of non-payment

was put into the office on the 13th day of January addressed
to the defendant Bradley at his usual place of residence,
the said notice was given within reasonable time, although
Bradley may not have received it until the following
day.

"2. The draft or bill of exchange being drawn by defend-
ant Gilliam payable to his own order and endorsed by
him he is liable as upon a promissory note, and is liable
without notice."

His Honor refused to give these instructions, (to which
plaintiff excepted,) and instructed the jury that the plain-
tiff should have given notice to Gilliam and Bradley, at
the latest by the mail leaving Asheville on the 12th day of
January, and if it had not done so they were discharged
from all liability thereon, unless they had waived notice by
subsequent promise to pay.

To these instructions the plaintiff also excepted.

There was testimony offered by both plaintiff and defend-
ants as to an alleged waiver of notice by subsequent con-
duct and promise to pay by the latter, but as there was no
exception to his Honor's charge on that point it is not set
out.

The jury responded to the first issue, yes; and to the
second and third issues, no.

Motion for new trial overruled and judgment was ren-
dered upon the verdict for defendant—to which plaintiff
excepted, and assigned the following errors on appeal:

"1. That the court refused to give the instructions
prayed.

"2. That the court instructed the jury that the notice
given to Bradley was not due notice.

"3. That the court instructed the jury that defendant
Gilliam was entitled to notice."

117—34

*Messrs. Davidson & Jones* and *W. W. Jones,* for plaintiff (appellants).

*Mr. J. H. Merrimon,* for defendants.

CLARK, J.: The draft having been accepted, the drawee became primarily liable, and in the event of dishonor notice must be given to all those who are secondarily liable, as drawer and endorsers. *Denny* v. *Palmer,* 27 N. C., 610; Tiedman Com. Paper, Sec. 336; 3 Randolph Com. Paper, Sec. 1238; 2 Daniel Neg. Inst., Sec. 995; *Code,* Sec. 42 and 49. Notice of dishonor must be given to the drawer. *Brown* v. *Teague,* 52 N. C., 573. If it had been in fact accommodation paper, then, notwithstanding the form of the paper, the drawer would have been primarily liable and not entitled to notice, but the burden to show this is on the holder, and there being no evidence to that fact the form of the paper governs and the drawer was entitled to notice. It is true that being an inland bill, protest was not necessary, but notice of dishonor must be given with the same promptness as of a protest. *Hubbard* v. *Troy,* 24 N. C., 134; *Bank* v. *Lutterloh,* 95 N. C., 495; *Shaw* v. *McNeill, Ibid,* 535. The insolvency of the drawee does not excuse the holder for failure to give notice to the parties secondarily liable. *Denny* v. *Palmer, supra,* 2 Daniel, *supra,* Sections 1171, 1172. The Law Merchant always required notice to be given to the parties secondarily liable, in reasonable time, what was reasonable time being a question of law. *Brittain* v. *Johnson,* 12 N. C., 293. This leading to endless litigation as to what was reasonable notice under varying circumstances, it has now been long settled that reasonable notice is one which is sent by the first post, after the day of dishonor and when there is a daily mail as here, this necessarily means the next day, if the next

day's mail does not leave before business hours, as it did not in this case. The acceptance not having been paid at maturity on the 11th of January, notice of dishonor should have been mailed on the 12th. *Hubbard* v. *Troy* and *Denny* v. *Palmer*, *supra;* 2 Daniel, *supra*, Sec. 1039; 3 Randolph, *supra*, Sec. 1260; 1 Parson Bills and Notes, 507; 3 Kent Com. (13th Ed.) 106, 107; Tiedman, *supra*, Sec. 337. In the charge of the court below there was no error.

No Error.